1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11   SSI SYSTEMS INTERNATIONAL INC., and    )   Case No.: 11-CV-00774 PSG
     ACCESSORIES MARKETING, INC.,            )
12                                           )   **ORDER RE TEK'S MOTIONS FOR**
                                             )   **SUMMARY JUDGMENT OF**
13                       Plaintiffs,         )   **DAMAGES AND INVALIDITY**
              v.                             )
14                                           )   **(Re: Docket No. 99, 100)**
                                             )
15   TEK GLOBAL S.R.L. and TEK               )
     CORPORATION,                            )
16                       Defendants.         )
     _____)

17   TEK GLOBAL S.R.L. and TEK               )   Case No.: 11-CV-01649 PSG
     CORPORATION,                            )
18                                           )   **ORDER RE SSI'S MOTIONS FOR**
                                             )   **SUMMARY JUDGMENT OF**
19                       Cross-Plaintiffs,   )   **INVALIDITY AND NON-**
              v.                             )   **INFRINGEMENT; AND TEK'S**
20                                           )   **MOTION FOR SUMMARY**
     SSI SYSTEMS INTERNATIONAL INC., and    )   **JUDGMENT OF INFRINGEMENT**
21   ACCESSORIES MARKETING, INC.,            )
                                             )
22                       Cross-Defendants.   )   **(Re: Docket No. 98, 101, 103)**
     _____)

23          Before the court in this patent case are a number of motions for summary judgment from

24   both parties.  TEK Global S.R.L. and TEK Corporation ("TEK") bring two motions for summary

25   judgment on the issues of damages and invalidity of the United States Patent No. 6,789,581 ("the

26   '581 patent").  Sealant Systems International Inc. ("SSI") and Accessories Marketing, Inc. ("AMI")

27   move for summary judgment of infringement of United States Patent No. 7,789,110 ("the '110

28
                                               1
     Case No.: C 11-774 PSG
     ORDER

United States District Court
For the Northern District of California

patent"). SSI[1] also moves for summary judgment on non-infringement and invalidity of the '110 patent. On February 12, 2013, the parties appeared for hearing. Having considered the papers and arguments of counsel, the court GRANTS SSI's motion for invalidity of the '110 patent, DENIES AS MOOT the parties' cross-motions on infringement of the '110 patent, DENIES TEK's motion for invalidity of the '581 patent, and GRANTS-IN-PART TEK's motion for partial summary judgment on damages. The court sets forth its reasoning below.

## I.     BACKGROUND

SSI and AMI are California corporations engaged in the manufacture and sale of onboard tire repair systems.[2] TEK is an Italian limited liability company involved in the same.[3] On November 10, 2010, TEK initially sued SSI for infringement of the '110 patent in the Southern District of New York. On February 18, 2011, SSI filed suit against TEK in this district, seeking declaratory judgment of noninfringement of the '110 patent ("the original case"). SSI moved successfully to transfer the New York case here.[4] SSI then moved to consolidate the two cases, a motion which the court granted.[5] Later, SSI amended its complaint to include an affirmative patent infringement claim against TEK, asserting U.S. Patent No. 6,789,581 ("the '581 patent")[6] ("the secondary case").[7]

---

[1] Unless otherwise noted, the court refers to Plaintiffs SSI and AMI jointly as "SSI" in this litigation. Where necessary, the court will delineate between the two.

[2] *See* Docket No. 37.

[3] *See id.*

[4] *See id.*

[5] *See* Docket No. 8.

[6] *See* Docket No. 37.

[7] The court uses the terms "original case" and "secondary case" for ease of reference only.

Case No.: C 11-774 PSG
ORDER

**A.      The original case: TEK sues SSI for infringement of the '110 patent**

The '110 patent discloses "a kit for inflating and repairing inflatable articles, in particular, tires."[8]  The kit includes "a compressor assembly, a container of sealing liquid and connectors for connecting the container to the compressor assembly and to an inflatable article for repair or inflation."[9]

TEK claims infringement of 1-5, 11-15, and 21-31 of the '110 patent by any SSI or AMI one-piece integrated On Board Tire Repair System ("OTRS") imported, sold, or offered for sale in the United States that includes a three-way valve allowing for the kit to either repair a tire using sealant and/or sealant and air to inflate a tire with compressed air, as well as two separate hoses, one for sealant repair and an additional hose for air inflation.[10]  The accused products include products numbered 70006/70006s, 70011/70001s, 70012/70012s, 70013/70013s, 70015/70015s, 70016/70016s, 70019/70019s, 70020/70020s, 70021/70021s, 70040/700400s, 70041/70041s.[11]

**B.      The secondary case: SSI sues TEK for infringement of the '581 patent**

SSI claims infringement of the '581 patent, which discloses and claims a tire repairing device.[12]  The device operates such that when the air compressor is activated in the claimed device, air from the air compressor pushes tire sealant out of the attached container into and out of the receptacle/port, into the air flow path, and into the connected tire.[13]

---

[8] *See* Docket No. 101-2 at 1.

[9] *See id.*

[10] *See* Docket No. 98 at 5.

[11] *See id.*

[12] *See* Docket No. 111-2 at 1.

[13] *See id.*

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

1    SSI has asserted infringement of claims 1-3, 8, 10-11, 13, 15, 17, 21-24, 27-31, 34, 36, 38-

2  43, 45-47.[14]

3              ## II.        SUMMARY JUDGMENT STANDARDS

4        Summary judgment is appropriate only if there is "no genuine dispute as to any material

5  fact and the movant is entitled to judgment as a matter of law."[15]  The moving party bears the

6  initial burden of production by identifying those portions of the pleadings, discovery and affidavits

7  which demonstrate the absence of a triable issue of material fact.[16]  The standard for summary

8  judgment differs depending on whether the moving party bears the burden of persuasion at trial.[17]

9  If the moving party bears the burden of persuasion at trial, he must present "credible evidence"

10 showing that he is entitled to a directed verdict.[18]  The burden of production then shifts to the non-

11 moving party to produce evidence raising a genuine issue of material fact.[19]  On the other hand, if

12 the moving party does not bear the burden of persuasion at trial, he can prevail on a motion for

13 summary judgment in two ways: by proffering "affirmative evidence negating an element of the

14 non-moving party's claim," or by showing the non-moving party has insufficient evidence to

15 establish an "essential element of the non-moving party's claim."[20]  If met by the moving party, the

16 burden of production then shifts to the non-moving party, who must then provide specific facts

17 showing a genuine issue of material fact for trial.[21]  In both instances, the ultimate burden of

18 _____

19 [14] *See* Docket No. 100.

20 [15] Fed. R. Civ. P. 56(a).

21 [16] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

22 [17] *See Celotex Corp.,* 477 U.S. at 331.

23 [18] *Id.*

24 [19] *See id.*

25 [20] *Id.*

26 [21] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th
   Cir. 1987).

4

Case No.: C 11-774 PSG
ORDER

persuasion remains on the moving party.[22]  In reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[23]

## III.   DISCUSSION

### A.   SSI's Motion for Invalidity of the '110 Patent

The court first considers SSI's motion for summary judgment of the invalidity of '110 patent claims 1-5, 11-15, and 21-31 due to obviousness.[24]

A patent is obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[25]  Obviousness is a question of law based on (1) the scope and content of the prior art, (2) the differences between the claims and prior art, (3) the level of ordinary skill in the pertinent art, and (4) objective indicia of nonobviousness.[26]  The party asserting invalidity bears the burden of proving "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the

---

[22] *See id.*

[23] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[24] *See* Docket No. 101.

[25] 35 U.S.C. § 103(a).  *See also KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 406 (2007).

[26] *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

5

Case No.: C 11-774 PSG
ORDER

skilled artisan would have had a reasonable expectation of success in doing so."[27]  The district

court reviews any material factual findings by the patent examiner de novo.[28]

### i.      Claims 1, 26, and 27

SSI contends that claims 1, 26, and 27 are obvious in light of the combination of U.S.

Patent Application Publication 2003/0056851 to Eriksen ("Eriksen") and Japanese Patent No. 2004-

338158 issued to Bridgestone Corporation ("Bridgestone").[29]  Claim 1 reads as follows:

> A kit for inflating and repairing inflatable articles; the kit comprising a compressor
> assembly (2), a container (3) of sealing liquid, and connecting means (4,5) for connecting
> the container to the compressor assembly (2) and to an inflatable article for repair or
> inflation, and being characterized by comprising an outer casing (6) housing said
> compressor assembly (2) and defining a seat (7) for the container (3) of sealing liquid, said
> container (3) being housed removably in said seat (7), and by comprising container
> connecting means (4, 40) for stably connecting said container to said compressor assembly
> (2), so that the container, when housed in said seat (7), is maintained functionally connected
> to said compressor assembly (2), said kit further comprising of an additional hose (83)
> cooperating with said inflatable article; and a three-way valve (81) input connected to said
> compressor assembly (2), and output connected to said container (3) and to said additional
> hose (83) to direct a stream of compressed air selectively to said container (3) or to said
> additional hose (83).[30]

According to the prosecution history, the examiner rejected claims 1-3, 5-6, 9 and 13

within the original '110 patent application due to anticipation by Eriksen.[31]  The '110 patent

application was later allowed after the applicant amended pending claim 1, the broadest claim, to

incorporate the limitations "an additional hose (83) cooperating with said inflatable article; and a

---

[27] *Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)
(quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)).

[28] *See Kappos v. Hyatt*, 132 S. Ct. 1690, 1696 (2012) (citing 5 U.S.C. § 706).

[29] *See* Docket No. 101 at 2.

[30] Docket No. 101-2 at col. 5, ll. 43-61.

[31] *See* Docket No. 101-9 at ¶¶ 7-14.

6

United States District Court
For the Northern District of California

three-way valve."[32]   SSI urges that Bridgestone discloses the additional limitations, rendering claim 1, along with similarly-drafted claims 26 and 27, obvious when combined with Eriksen.

### a.      Scope and Content of Eriksen and Bridgestone

The parties agree that Eriksen and Bridgestone are prior art and further that Eriksen disclosed all the elements within claim 1, 26 and 27 of the '110 Patent except "a three-way valve" and "an additional hose."[33]

Where they disagree is exactly what was disclosed in Bridgestone and specifically whether Bridgestone discloses each of the missing limitations.   No dispute exists regarding disclosure of the "a three-way valve" limitation in Bridgestone; even TEK's expert conceded that air directional valve 48 in Bridgestone embodies a three-way valve,[34] which conforms with the court's previous construction of a three-way valve as "[a] valve with one input and two outputs."[35]

This leaves the question of whether Bridgeston discloses "an additional hose."  TEK disputes that air tube 54 in Bridgestone qualifies as "an additional hose" because air tube 54 is not directly connected to a tire and thus is not "cooperating with" the tire, as the claim requires.[36] According to TEK, if "an additional hose" is required to be directly connected to a tire, then air tube 54, not connected to a tire as shown, cannot represent the element of "an additional hose."  As such, whether air tube 54 represents "an additional hose" hinges on the construction of the term "cooperating," and such a question is one of law to be resolved by the court.[37]

---

[32] *See* Docket No. 101-9 at ¶¶ 17-18; *See also* Docket No. 101-13 at ¶ 5.

[33] *See* Docket No. 101-9 at ¶¶ 9-14.

[34] *See* Docket No. 101-16 at 211:12.

[35] Docket No. 88 at 22.

[36] Docket No. 101-16 at 211.

[37] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1330 (Fed. Cir. 2005).  The court has previously articulated the legal standards it applies to claim construction in this case.  *See* Docket No. 88.

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

The intrinsic evidence does not support TEK's claim interpretation that "cooperating" means "directly connected to." Although the applicant chose the words "connectable" and "connected to" earlier in the language of claim 1, the applicant never uses a variation of "connected to" regarding the tire and the additional hose.[38] Rather, the applicant described the additional hose as "cooperating with said inflatable article."[39] Federal Circuit precedent dictates that by using different terminologies, the applicant is presumed to have intended two different meanings.[40] TEK fails to rebut such a presumption.

TEK cites the specification of the '110 patent stating "an additional hose 83 connectable to the tyre" to support its contention that the "cooperating" additional hose must be directly connected to the tire.[41] However, this language merely describes Figure 7, a figure explicitly characterized as the "best mode for carrying out the invention," or a "preferred, non-limiting embodiment of the patent," which suggests a direct connection between the additional hose 83 and the tire at most is an option, rather than a requirement.[42]

The court concludes there is no support for construing the term "cooperating with" as "directly connected to." As SSI asserts, "cooperating with" is properly construed to mean "working together," whether directly or indirectly, because nothing in the patent suggests a

_____

[38] Docket No. 101-2 at col. 5, ll. 56.

[39] *Id.*

[40] *See e.g., Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1349 (Fed. Cir. 2012) ("The fact that the two adjacent claims use different terms in parallel settings supports the district court's conclusion that the two terms were not meant to have the same meaning"); *Tandon Corp. v. U.S. Intern. Trade Comm'n.,* 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used.").

[41] Docket No. 109 at 12.

[42] *See DSW v. Shoe Pavilion*, 537 F.3d 1342, 1347-48 (Fed. Cir. 2008) ("When claim language is broader than the preferred embodiment, it is well-settled that claims are not to be confined to that embodiment.").

Case No.: C 11-774 PSG
ORDER

different meaning should be attributed to that term.[43]   Accordingly, there is no genuine dispute that air tube 54 in Bridgestone represents the element of "an additional hose" by working together with a tire, even though it is not directly connected to the tire.

### b.       Level of Ordinary Skill in the Art

Although the parties do not address the level of ordinary skill in the art anywhere in their papers, SSI's expert declares that "a person of ordinary skill in the art of the '110 patent is a person with at least a bachelor's degree in mechanical engineering and at least two years of experience designing and analyzing devices for pressurizing systems using air compressors and pneumatic devices."[44]   Although one could imagine that TEK would urge that a lower level of skill, which would make it more difficult to establish obviousness,[45] the court must take the record as it finds it, and for purposes of resolving the present dispute, a reasonable jury could only find that the level of ordinary skill is that of "a person with at least a bachelor's degree in mechanical engineering and at least two years of experience designing and analyzing devices for pressurizing systems using air compressors and pneumatic devices."[46]

### c.       Differences Between the Claimed Invention and the Prior Art

Even with no genuine dispute that Eriksen and Bridgestone disclose all of the claim limitations at issue in claims 1, 26, and 27, the question remains whether there is a genuine dispute whether the ordinarily skilled artisan would combine the references to arrive at the claimed invention.  The Federal Circuit has "consistently stated that courts 'may find a motivation to

---

[43] Docket No. 116 at 3-4.

[44] *See* Docket No. 101, Ex. 23 at ¶ 3.

[45] *See Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1324 (Fed. Cir. 2011).

[46] *See* Docket No. 101-23 at ¶ 3.

9

Case No.: C 11-774 PSG
ORDER

combine prior art references in the nature of the problem to be solved,' and that '[t]his form of motivation to combine evidence is particularly relevant with simpler mechanical technologies.'"[47]

With regard to "the nature of the problem to be solved," it is apparent that toward the same problem both Eriksen and Bridgestone offer nearly identical solutions, which is repairing deflated tires with air and/or sealing liquids.[48]  A reasonable jury could only find that the motivation to view them together and then combine would be substantial.  Bridgestone elaborated extensively on the mechanism and advantage of incorporating a "gas-liquid switching valve" that allows selection between air and/or sealing liquid.[49]  Bridgestone also discussed the possibility of supplying both air and sealing liquid through a single hose, a solution offered by Eriksen, "so a hose does not have to be refastened to a pneumatic tire."[50]  The discussions within Bridgestone on separating the flow path of air and sealant liquid in tire-repairing devices demonstrate that practitioners in the art already understand the advantages and disadvantages between combining and separating the flow paths.

Given that the tire-repairing kits embody relatively simple mechanical technology, adding a three-way valve and an additional hose to the Eriksen device would not require extraordinary inferences or large creative steps from a person of ordinary skill.[51]  Even if tire-repairing devices were not considered simple technologies, the aforementioned discussion in Bridgestone on separating flow paths for air and sealing liquid already provide more than enough of a suggestion to combine Eriksen and Bridgestone.

---

[47] *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011) (citing *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004)).

[48] *See* Docket No. 101-5 at 1 and Docket No. 101-3 at col. 2, ll. 17-22.

[49] Docket No. 101-5 at 4-5 ¶¶ 12-14.

[50] *Id.* at ¶¶ 0015; *See also* Docket No. 101-23 at ¶ 9.

[51] *See KSR,* 550 U.S. at 418.

Case No.: C 11-774 PSG
ORDER

The only evidence TEK presents to counter this assertion is that one of ordinary skill would not combine Bridgestone and Eriksen because the '581 patent teaches away from combining a sealant container with two separate openings in Bridgestone with a disposable ready-made container with one opening as in Eriksen:[52]

> In every case known to the inventors, conventional non-pressurized containers of this type are pumped with air at one end of the container, and the tire sealant is forced out of the container at the opposite end of the container. Such design requires at least two seals and a custom-made container. By contrast, the instant invention's bottle has only one opening and requires only one seal.[53]

But TEK provides no explanation on how the '581 patent excerpt quoted above teaches away from such combination. Even if the jury interpreted the excerpt in the manner most favorable to TEK, this language suggests only that the '581 patent invention differed from other designs known to the inventor by having a container with one opening, rather than two. Yet this distinction was not made in either Bridgestone or Eriksen, nor was it made in the context of using a three-way valve or additional hose. To the contrary, Bridgestone discloses the use of a three-way valve and additional hose as an improvement to a conventional tire repair kit, which has both air intake and exhaust openings at one end of the container.[54]

### d.   Objective Indicia of Nonobviousness

"*Graham* set forth a broad inquiry and invited courts, where appropriate, to look at any secondary considerations that would prove instructive."[55]  "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."[56]

---

[52] Docket No. 109 at 10.

[53] Docket No. 101-22 at 5:57-64.

[54] *See* Docket No. 101-5 at Fig. 3; Docket No. 101-3 at Fig. 1.

[55] *KSR,* 550 U.S. at 415.

[56] *Id.* at 406.

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As a secondary consideration of non-obviousness, TEK argues that the additional hose resolves the long-felt but unsolved need of avoiding sealant clogging in the only hose in a tire-repairing device. But the '110 patent itself nowhere mentions this purported benefit of having an additional hose.[57] Instead, the applicant described the need satisfied as providing a single casing that can combine the compressor unit and the sealing liquid container.[58] Additionally, TEK offers no evidence outside the patent even hinting that sealant clogging of the hose was somehow long vexing the field.

TEK also points to indicia of commercial success, but TEK's offering of evidence is inadequate. TEK relies only on its expert's conclusory allegation rather than on any objective sales data.[59] Even if a reasonable jury could accept this unsupported assertion, TEK fails to eliminate other possibilities, such as pricing or advertising, that might have contributed to the commercial success of device.[60] No reasonable jury could find this analysis persuasive as a secondary consideration to rebut invalidity.

### e. The Ultimate Conclusion of Obviousness

Having resolved whether there are no triable issues on the underlying factual findings set forth in *Graham*, the court must examine the ultimate legal question of obviousness as a matter of law. Here, there is no genuine dispute that Bridgestone and Eriksen together disclose all of the limitations at issue, and both Bridgestone and Eriksen were directed at solving the same problem – providing a portable tire repair device with a self-contained compressor and sealant container to

---

[57] *See* Docket No. 101-2 at col. 1-2.

[58] *See id.* at col. 1, ll. 36-40 ("Considerable advantage is to be gain, there, . . . with a repair and inflation kit comprising a small compressor and a container of sealing liquid").

[59] Docket No. 109 at 16.

[60] Docket No. 116 at 14.

12

Case No.: C 11-774 PSG
ORDER

allow the user to either repair or inflate the tire.[61]  Because both Bridgestone and Eriksen occupy the same narrow field, no reasonable jury could conclude that a person of ordinary skill in the art would not have combined them to practice the claimed invention.  Under such circumstances, claims 1, 26, and 27 are obvious.

**ii.** **Claims 2-5, 12-15, and 29-30**

As discussed above, the claims dependent on claims 1 and 26 all contain the elements of "a three-way valve" and "an additional hose."  The patent examiner rejected the dependent claims 2-5, 12-15, and 29-30 as anticipated by Eriksen along with other prior arts under 35 U.S.C. § 102.[62]  If the additional limitations recited in aforementioned claims are properly identified in Eriksen, or elsewhere in the prior art, the dependent claims are thus rendered obvious in light of Bridgestone. The point of contention regarding these dependent claims focuses on whether Eriksen disclosed the limitation "a valve device" so as to render claims 2 and 12 obvious, the limitation "control member" to as to render claims 3, 13 and 29 obvious, and the limitation "inlet" and "outlet fitting" so as to render claims 5 and 15 obvious.[63]

SSI, along with the patent examiner, identifies the combination of "seal 38, piece 45, and plunger 46" as "a valve device" disclosed by Eriksen.[64]  Furthermore, SSI identifies that in Eriksen "an inlet connectable to said compressed-air feed line, and an output for the sealing liquid" would be

---

[61] *See* Docket No. 101-23 at ¶ 9.

[62] *See* Docket No. 101-9 at 5 ¶ 10; *Adv. Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1282 (Fed. Cir. 2000) (holding that to demonstrate anticipation, the proponent must show "that the four corners of a single, prior art document describe every element of the claimed invention.").

[63] The court previously discussed the *Graham* factors of obviousness to an ordinary person skilled in the art and any secondary considerations to rebut claims of obviousness in reference to the independent claims.  As the court finds the reasoning applicable to the discussion of obviousness of the dependent claims, as well, the court will incorporate said reasoning and discuss only the differences between the prior art and the claims at issue.

[64] *See* Docket No. 101 at 20.

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

fourth channel 29 and fifth channel 30 in the Eriksen device.[65] Moreover, SSI reiterates the patent

examiner's characterization of plunger 46 as a control member.[66] Lastly, SSI cites the patent

examiner's classification of lower chamber 44 and upper chamber 43 from Eriksen to be the "inlet" and

"outlet" element in the '110 patent claims.

TEK, on the other hand, contends against SSI's characterization that the combination of "seal

38, piece 45, and plunger 46" qualifies as "a valve device."[67] TEK argues that "the air flow path

from the compressor and the air flow path to the tire are not opened or closed by the plunger.

Rather, the plunger's function is limited to piercing the seal of the sealant container."[68] In addition,

the plunger of Eriksen provides no inlet or outlet that be connected in a fluid-tight manner to a hose

to prevent leak outside of the container.[69] TEK offers no evidence other than its own expert

declaration to counter SSI's interpretation of Eriksen's disclosure of "control member," "inlet," and

"outlet fitting." For example, after asserting that "[c]laim 3 requires the valve device to isolate the

inlet and outlet from the outside of a container," TEK concludes, with only citation to its expert

and without any analysis, that "as one skilled in the art would appreciate, Eriksen's device fails to

isolate the outlet from inside of the container."[70] But "[b]road conclusory statements offered by

---

[65] *See* Docket No. 116 at 9 (citing Docket No. 101, Ex. 2 at col. 7, ll. 1-3).

[66] *See* Docket No. 101 at 21 (citing Docket No. 101, Ex. 9 at 5 ¶ 10 ("Eriksen discloses said valve device comprises at least one control member (46) movable, in response to pressurization of said inlet and said outlet")).

[67] *See* Docket No. 109 at 13.

[68] *See id.*

[69] *See id.*

[70] *Id.* at 14.

14

Case No.: C 11-774 PSG
ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

[one party's] experts are not evidence and are not sufficient to establish a genuine issue of material fact."[71]

The court agrees with SSI and the patent examiner.  The "seal 38, piece 45, and plunger 46" together embody "a valve device" in light of court's claim construction.[72]  The schematic of the Eriksen device shows that seal 38 can stop the flow of the liquid and thereby allow plunger 46 to push through the bottle seal in a fluid-tight manner, because seal 38 will prevent the sealing liquid from leaking out of the punctured hole.[73]  Then, contrary to TEK's assertion, plunger 46 functions other than piercing the seal of the container, because air can be sent via fourth channel 29 and then plunger 46 into the sealant bottle.[74]  The portion of the Eriksen specification that describes fifth chamber 30 as flow path for sealing liquid and channel 29 as flow path for pressurized air also supports SSI's characterization that these channels are "inlet connectable to said compressed-air feed line, and an output for the sealing liquid."[75]  The disclosure of "a valve device" in Eriksen, thus, renders claims 2 and 12 obvious in light of Bridgestone.

Further, the court finds that the characterization of plunger 46 to be "control member" and lower chamber 44 and upper chamber 43 to be "inlet" and "outlet fitting" to be well-supported. Plunger 46 acts as a control member because it moves "in response to pressurization of said

---

[71] *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1329 (Fed. Cir. 2001) (citing *Arthur A. Collins, Inc. v. N. Telecom Ltd.,* 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("In response, [the litigant] was required to designate specific facts showing that there was a genuine issue for trial.")).

[72] *See* Docket No. 101-9 at 9 ¶ 10 ("[A] valve device (seal 38, piece 45 and plunger 46 defines the valve device) fitted in fluid tight manner to the opening").

The court construed "a valve device" as "[o]ne or more valves fitted in a fluid-tight manner to the opening and having an inlet connectable to said compressed-air feed line, and an output for the sealing liquid."  Docket No. 88 at 23.

[73] *See* Docket No. 101-3 at Figure 11.

[74] *See id.* at col. 8, ll. 50-59.

[75] *See id.* at ll. 54-63.

15

compressed-air feed line."[76]  According to the Eriksen figure cited above, lower chamber 44 is

connected to channel 29, an inlet for pressurized air, and upper chamber 43 is connected to channel

30, an outlet for sealing liquid.[77]  In reference to patent examiner's determination, SSI maps out

clearly how the specifications on the Eriksen device disclosed elements within the claims of '110

patent.  This renders claims 3, 5, 13, 15, and 29 obvious in light of the Eriksen-Bridgestone

combination.

        iii.        **Claims 4, 14 and 30**

The point of contention regarding these dependent claims focuses on whether any prior art

has disclosed the element of "elastic means" so as to render claims 4, 14 and 30 obvious.  The

court construed the function of "elastic means" as "to keep a control member stably in a closed

position in the absence of air pressure and open in response to air pressure."[78]  Additionally, "the

corresponding structure for the elastic means is a spring and equivalents thereof."[79]

SSI relies on the examiner's comment in the prosecution history and U.S. Patent No.

4,765,367 to Scott ("Scott") to show that elastic means are known in the prior arts.[80]  The examiner

took official notice that elastic means are well known in the art for biasing a valve to a closed

position.[81]  Therefore, it would have been obvious to one of ordinary skill at the time of invention

to include elastic means in the valve device of Eriksen to bias the plunger to a closed position.[82]

SSI also cites Scott as an example of using spring 44, as shown in the figure, to keep a valve

---

[76] Docket No 101-9 at ¶ 10; *See* Docket No. 101, Ex. 2, col. 8, ll. 49-53.

[77] *See* Docket No. 101-2 at Figure 13-14.

[78] Docket No. 88 at 25.

[79] *Id.*

[80] *See* Docket No. 116 at 11-13.

[81] *See id.*

[82] *See* Docket No. 101-9 at ¶ 14.

16

Case No.: C 11-774 PSG
ORDER

"stably in said closed position in the absence of [air] pressure from said inlet."[83]  This is clear and convincing evidence that the use of "elastic means," such as a spring, was known in the art.

To refute SSI's argument, TEK, again, quotes the '110 patent language and only offers its expert's conclusory opinion that Eriksen's plunger does not keep a control member stably in a closed position.[84]  This is insufficient to effectively rebut SSI's showing that the "elastic means" limitation was known in the art.  Claims 4, 14, and 30 therefore are invalid as obvious in light of the Eriksen-Bridgestone combination.

### iv.     Claims 11, 21-25, 28, and 31

The validity of claims 11, 21-25, 28 and 31 depends on whether any prior art disclosed the element of "a selector" so as to render claims 11 and 28 obvious, the element of "a relief valve" so as to render claim 21 and 23 obvious, the element of "a non-return valve" so as to render claim 22 and 24 obvious, and the element of "periphery groove in the outer casing" so as to render claim 22 and 24 obvious.

Regarding the use of "a selector," there is no genuine dispute that the element was disclosed in Bridgestone, which, as discussed above, also discloses "a three-way valve."[85]  The inclusion of a three-way valve in a device necessitates the use of a selector to allow the user to choose between openings of different flow paths.[86]  As such, Bridgestone discloses in the specification that an air directional valve 48 can be controlled by operational panel 78 as shown in the figure.[87]

---

[83] Docket No. 101-20 at col. 2, ll. 27-33 ("[I]n the first valve position, the second input 18 is closed with respect to outlet passageway 24 and outlet 26."); *Id.* col. 2, l. 69-col. 3 l. 2 ("The valve 28 will return to the first or normal condition . . . by means of spring 44 under cap 30.").

[84] *See* Docket No. 109 at 15, ll. 5-14.

[85] Docket No. 101-5 at Figure 1.

[86] *See* Docket No. 101-23 ¶ 16.

[87] *See* Docket No. 101-5 at ¶¶ 0028, 0041, 0045.

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TEK offers little in response other than that SSI fails to analyze the complex valve system in Bridgestone and provide motivation for one of ordinary skill in the art to modify it.[88]  These arguments lack merit as SSI did offer Bridgestone as a prior art that disclosed the use of a selector in conjunction with a three-way valve.[89]  As TEK does nothing to rebut SSI's contentions, the court finds 11 and 28 to be obvious.

With regard to the disclosure of a relief valve, a non-return valve, and a periphery, experts from both sides agree that all these features were well-known to person of ordinary skill in the art.[90]  Even if there were any genuine dispute on the issue, WIPO Publication WO 03/004328 to Laetgaard and U.S. Patent No. 6,789, 581 to Interdynamics plainly disclose the use of a relief valve and a non-return valve.[91]  This renders claims 11, 21-25, 28, and 31 invalid as obvious.

In sum, SSI has presented clear and convincing evidence to demonstrate the asserted claims of the '110 patent are obvious in light of Eriksen, Bridgestone, and other prior art references.

**B.    The Parties' Cross Motions for Summary Judgment of Infringement of the '110 Patent**

In light of the court's invalidity determination regarding the asserted claims of the '110 patent, the court must deny the parties' cross-motions on the issue of infringement of the '110 patent as moot.[92]

---

[88] *See id.*

[89] *See id.*

[90] *See* Docket No. 116 at 14 (citing Docket No. 101-17 at ¶ 215; Docket No. 101-16 at 234:11-22, 235:4-11).

[91] *See* Docket No. 101 at 24; Docket No. 101-21; Docket No. 101-22.

[92] *See Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("a judgment of invalidity necessarily moots the issue of infringement").  *See also Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1356 (Fed. Cir. 2001); *Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.*, Case No. 04-05385 JW, 2008 WL 3842924, at *12 (N.D. Cal. Aug 14, 2008).

18

C.      **TEK's Motion for Summary Judgment of Invalidity of the '581 Patent**

A patent is anticipated if it was disclosed in a patent application or published patent.[93]  To show anticipation, the moving party must "identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."[94]  As noted above, a patent is obvious if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[95]  Also as noted above, the obviousness inquiry is one of law with underlying factual questions, the latter of which are analyzed under the factors presented in *Graham*.[96]

TEK asserts the '581 is anticipated and/or obvious in light of U.S. Patent Publ. No. U.S. 2004/0173282 ("US '282").  US '282 was filed as a patent application on June 28, 2002, disclosing a "compact combination apparatus for inflating and mending a car tyre."[97]  The objective of the device was "to provide an inflating unit, where it is not necessary to carry the container with the sealing material all the time."[98]  It was originally rejected as anticipated by PCT Patent Application

---

[93] *See* 35 U.S.C. § 102(a).

[94] *See Schumer v. Lab Computer Systems, Inc.,* 308 F.3d 1304, 1315-16 (Fed. Cir. 2002).

[95] 35 U.S.C. § 103(a).

[96] *See Graham*, 383 U.S. at 17-18.

[97] *See* Docket No. 111- 3.

[98] *See id.*

Case No.: C 11-774 PSG
ORDER

No. W02/066236 ("Eriksen").[99]  On September 9, 2004, the application was published.[100]  On March 11, 2005, the application was abandoned.[101]

As a preliminary matter, the court notes that TEK has done little to show anticipation or obviousness other than to remark on the similarities between the '581 patent and US '282.  Beyond arguing that the disclosed devices in each are similar, TEK does little more than assert that the '581 patent was anticipated and/or obvious.  By offering little other analysis, TEK struggles to meet its burden of proving invalidity by clear and convincing evidence.  On that basis alone, the court could deny TEK's motion.  Nevertheless, the court will consider the merits of TEK's arguments.

i.   **A Genuine Dispute Exists Whether US '282 Discloses "A Receptacle Formed in the Housing"**

Claims 1-3, 8, 10, 11, 13, 15, 17, 21-24, 27-31, 34, 36, 40, and 43 require the device contain "a receptacle formed in said housing."[102]  The court construed this term according to its plain and ordinary meaning.[103]  The court further noted that word "receptacle" connotes depth such that the device can receive a tire sealant container and provide for sealant to leave the container and enter the air flow path.[104]  Additionally, the court stated the receptacle's function was "to connect to the flow of compressed air and to sealingly receive a container of sealant."[105]

---

[99] *See* Docket No. 111-11.

[100] *See id.*

[101] *See* Docket No. 111-12.

[102] *See* Docket No. 111-2.

[103] *See* Docket No. 88 at 6.

[104] *See id.* at 7.

[105] *Id.*

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TEK states that the "cylindrical hole" in the housing of the '581 patent, identified by number 14 in Figure 1, is the "receptacle formed in said housing."[106]  TEK argues that this receptacle is also present in US '282, which also contains a cylindrical hole.[107]  TEK's expert filed a declaration stating the receptacle disclosed in US '282 is also in communication with the air flow path such that the air from the compressor enters the container placed in the receptacle, and the container is sealed in the receptacle so that air does not escape.[108]  Accordingly, TEK argues that US '282 discloses this claim term.  In the alternative, TEK states conclusorily that this element is obvious because both devices, in the '581 patent and US '282, perform in the same way so a person of ordinary skill in the art would find the receptacle to be obvious.

SSI counters that TEK's analysis is flawed for several reasons.  First, in US '282 the hole in the housing does not perform the function of sealingly receiving the container of sealant.  SSI presents evidence showing the hole identified as the supposed receptacle does not receive the container of tire sealant, but only the screw socket identified as 18 does.[109]  SSI's expert, Dr. King, reasons that because there is no intake or exhaust for either sealant or air identified in the hole in US '282, the hole cannot sealingly receive a container of sealant.[110]  No structure exists in the hole that would receive tire sealant at all.[111]

The reasoning of SSI's expert counters TEK's expert's assertion that the receptacle in US '282 discloses the same receptacle required by the '581 patent.  A jury might properly conclude that due to the differences between the receptacles in the two inventions, a person skilled in the art

---

[106] *See* Docket No. 100 at 9; Docket No. 111-2 at 3.

[107] *See* Docket No. 100-1 at ¶¶ 29-30.

[108] *See id.* at ¶ 17.

[109] *See* Docket No. 111-15 at ¶ 5.

[110] *See id.*

[111] *See id.*

21

would not have found the receptacle in '581 which sealingly receives the container of sealant to be anticipated by US '282.   TEK's assertions of anticipation on the claims containing "a receptacle formed in the housing" therefore cannot succeed.  For the same reasons, TEK's conclusory allegations of obviousness must also fail.[112]

>    ii.    **A Genuine Dispute Exists Whether US '282 Discloses the Claimed Port**

Claims 27-28, 30-31, 37-41, and 45-47 are substantially similar to those referenced above, except that they recite a port in place of a receptacle.[113]  The court construed "port" to mean "an enclosure that may be formed within and as an integral part of the housing or a separate structure that sealingly receives air and/or tire sealant."[114]

TEK argues that these claims are anticipated because US '282 also teaches a port.  TEK cites to Dr. Kazerooni's testimony, which claims the port is disclosed as Structure 18 in US '282 Figure 4, which he alleges is the part seated within the receptacle.[115]  Additionally, TEK contends these claims are obvious because the device in US '282 and in the '581 patent work in the same manner, with air from a compressor moving in an air flow path to a bottle with sealant to push the sealant to the tire.  TEK's expert testifies that use of the port changes only how the bottle fits into the receptacle, but not how the device actually works.[116]

SSI raises a triable issue of fact by offering evidence that the identified structure in US '282 is not a port as defined in the '581 patent.  In the same way that SSI has presented evidence

---

[112] TEK's obviousness claims also fail because TEK offers no supporting evidence or analysis under the *Graham* factors.  What little evidence offered consists of boilerplate language in Dr. Kazerooni's expert declaration.  *See, e.g.,* Docket No. 100- 1 at ¶ 30.  As previously noted, the court is not required to accept an expert's conclusory allegations.  *See Telemac Cellular Corp.,* 247 F.3d at 1329.

[113] *See* Docket No. 100 at 45-46.

[114] Docket No. 88 at 12.

[115] *See* Docket No. 100-1 at ¶ 88.

[116] *See id.* at ¶ 91.

22

Case No.: C 11-774 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

countering TEK's allegation that US '282 discloses a receptacle that sealingly receives a bottle of tire sealant, SSI's evidence also counters the allegation the US '282 discloses a port with the same function.[117]  Further, SSI also presents significant evidence contesting whether US '282 discloses a port with an intake and exhaust, as required by the '581 patent.[118]

### iii.   A Genuine Dispute Exists Whether US '282 Discloses a Reservoir

Claim 42 requires a "reservoir formed in said housing in communication with said air flow path adapted to receive tire sealant."[119]  The claim also states that "when said air compressor is activated and tire sealant is received in said reservoir, air from said air compressor is forced into said reservoir and pushes tire sealant out of said reservoir, into said air path, and into the tire."[120]

Here, TEK does not argue anticipation, but rather that the reservoir would be obvious.  As support for this argument, however, TEK merely argues the difference is insubstantial and it is "obvious" to one skilled in the art to pour sealant into a cavity instead of keeping sealant in a bottle.  Aside from the fact that this conclusory allegation does not demonstrate clear and convincing evidence, SSI has presented expert evidence to counter this assertion.  Dr. King states the hole in US '282 is not configured to receive sealant without leaking the sealant.[121]

In sum, TEK has not proven by clear and convincing evidence that US '282 either anticipates or renders obvious the asserted claims of the '581 patent.

### D.   TEK's Motion for Partial Summary Judgment on Damages

The court finally turns to the TEK's motion for summary judgment on damages in the original claim.  As TEK correctly notes, the Federal Circuit has held that a party has standing to

---

[117] *See* Docket No. 11-15 at ¶¶ 5, 16.

[118] *See id.* at ¶ 17.  For example, it appears that US '282 does not use intake or exhaust, but rather pipe connectors, to perform these functions instead of in structure 18.

[119] Docket No. 100 at 46.

[120] *Id.*

[121] *See* Docket No. 111-15 at ¶ 23.

23

Case No.: C 11-774 PSG
ORDER

receive damages only if it shows it has legal title to the patent – either by way of title to the entire

patent, an undivided share of the entire patent, or exclusive rights to the patent in a specific

geographical region of the United States.[122]  TEK recognizes that although "AMI owns the '581

patent and thus may be able to recoup a reasonable royalty damages award,"[123] SSI is not entitled

to monetary damages because it is not an owner or assignee of the '581 patent.  Plaintiffs counter

that TEK's argument is inapposite because only AMI, not SSI, is seeking damages in the '581

patent infringement claim.

The parties appear to agree that AMI, as the '581 patent owner, has standing to pursue

damages, and SSI does not.  They disagree over whether SSI is actually seeking damages.  TEK

argues that Plaintiffs' damages expert, Mr. John L. Hansen ("Hansen"), referred in his damages

report to "total royalties... due to SSI."[124]  Plaintiffs argue this was a typographical error that did

not affect Hansen's damages calculation.  The court need not decide at this time whether Hansen

did or did not consider SSI's standing to pursue damages from TEK in calculating potential

reasonable royalty awards.  Instead it is sufficient to conclude that, as agreed upon by the parties,

only AMI has standing to seek damages from TEK on the '581 patent.

TEK also argues that AMI may not recover damages for the time period prior to filing of

the present lawsuit because AMI never provided notice to TEK.  If the patentee does not "mark" its

products, "no damages shall be recovered by the patentee in any action for infringement, except on

proof that the infringer was notified of the infringement and continued to infringe thereafter."[125]

---

[122] *See Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1551 (Fed. Cir. 1995).

[123] Docket No. 99 at 3.

[124] Docket No. 99-1, Ex. 1 at ¶ 60.

[125] 35 U.S.C. § 287(a).

24

Case No.: C 11-774 PSG
ORDER

Damages may then only be collected from the point of such notice, which includes filing an action for patent infringement.[126]

What TEK fails to recognize is that the record is undisputed that Plaintiffs' products do not practice the '581 patent, so they are not required to comply with 35 U.S.C. § 287(a).[127]  Both AMI and SSI stated in their interrogatory responses that their products do not practice the '581 patent.[128]  Accordingly, the marking rule does not limit AMI's claim for damages.[129]

## IV.   CONCLUSION

SSI's motion for summary judgment of invalidity of the '110 patent is GRANTED.  The court DENIES AS MOOT both TEK's motion for summary judgment of infringement and SSI's motion for summary judgment of non-infringement.

TEK's motion for summary judgment of invalidity of the '581 patent is DENIED.  TEK's motion for partial summary judgment on damages is GRANTED-IN-PART such that only AMI, and not SSI, is entitled to pursue damages.

**IT IS SO ORDERED.**

Dated:  March 7, 2013

_____

PAUL S. GREWAL
United States Magistrate Judge

---

[126] *Id.*

[127] *See Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219 (Fed. Cir. 2002) (marking requirement inapplicable "where there are no products to mark"); *See also Oracle Am., Inc. v. Google Inc.*, Case No. 10-03561 WHA, 2011 WL 5576228, at *2 (N.D. Cal. Nov. 15, 2011).

[128] *See* Docket No. 105-3 at 4-5.  *See also* Docket No. 105-6 at 47:14-15, 114:16-20.

[129] *See Texas Digital Sys., Inc.*, 308 F.3d at 1219.

25

Case No.: C 11-774 PSG
ORDER