UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACCESSORIES MARKETING, INC.,  )<br>  )<br>              Plaintiff,  )<br>    v.  )<br>  )<br>TEK CORPORATION,  )<br>  )<br>              Defendant.  )<br>  )<br>_____ ) | Case No.: C 11-4773 PSG<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>**(Re: Docket Nos. 138, 139, 146)** |

Before the court are the parties' in limine motions. Plaintiff Accessories Marketing, Inc. ("AMI") brings two motions in limine, but they have been resolved by the parties.[1] Defendant Tek Corporation ("TEK") brings one motion in limine. On April 2, 2013, the parties appeared for a hearing. Having reviewed the papers and considered the arguments of counsel,

IT IS HEREBY ORDERED that TEK's motion in limine to exclude expert evidence and testimony on reasonable royalty damages is DENIED.

AMI's damages expert John Hansen ("Hansen") analyzed the reasonable royalty owed to AMI based on a hypothetical negotiation between AMI and TEK for a license of the '581 patent. TEK objects on four grounds: (1) Hansen improperly considered the competitive position of SSI, AMI's sister company to which AMI sells its tire repair kits; (2) Hansen improperly relied on

---

[1] *See* Docket No. 168, 169.

1

Case No.: 11-774 PSG
ORDER ON MOTIONS IN LIMINE

information he learned from Brett Mueller ("Mueller"); (3) AMI failed to disclose its reasonable royalties damages theory in discovery; and (4) Hansen did not properly follow the *Georgia-Pacific* factors in making his expert report.

Although Hansen considered the competitive position of SSI, this was not improper in light of the relationship between SSI and AMI. Both SSI and AMI are owned by Illinois Toolworks; AMI is the exclusive supplier of tire repair kits to SSI, who then sells the tire repair kits to the OEM market. Because SSI and TEK are competitors in the tire repair kit market, a license to TEK could very well impact SSI's profits, which could itself impact AMI's profits from SSI's sales.[2] Even though AMI cannot collect damages on behalf of SSI,[3] robust cross-examination should be more than sufficient to clear up any ambiguities.

As for Hansen's reliance on Mueller, although TEK argues that Hansen should not have relied upon Mueller's statement that the purchase price of the '581 patent was not based on potential royalties, Mueller has been designated as an expert witness and experts may rely on the opinion of other experts to formulate their opinions.[4] In addition, Mueller was AMI's designated 30(b)(6) witness and was in an appropriate position to testify as to the events of AMI's negotiation

---

[2] *See Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1378 (Fed. Cir. 2005) (overruled on other grounds) (where the patentholder was a holding company whose parent company was a competitor of the infringer, the patentholder properly introduced evidence regarding the impact of the infringer's sales on the parent company's sales in evaluating a hypothetical negotiation between the holding company and the infringer). *See also Synethes U.S.A. LLC v. Spinal Kinetics, Inc.*, Case No. 5:09-CV-01201 RMW, 2012 WL 4483158, at *12 (N.D. Cal. Sept. 27, 2012) ("[the patentee] is a mere holding company and any negotiation on its behalf would be conducted by and for the benefit of its corporate parent").

[3] *Cf. Poly-Am., L.P. v. GSE Lining Tech., Inc.,* 383 F.3d 1303, 1311 (Fed. Cir. 2004) (rejecting patentholder's argument that it could recover lost profits on behalf of its sister corporation, where the two sister corporations were different "arms" for the purposes of manufacture and sale, and remanding to lower court to determine whether patentholder itself suffered lost profits).

[4] *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1088 (N.D. Cal. 2006) aff'd, 221 F. App'x 996 (Fed. Cir. 2007) ("an expert is not required to testify only upon data the expert has personally gathered or tested" and may properly rely on data normally relied on by experts in the field).

2

Case No.: 11-774 PSG
ORDER ON MOTIONS IN LIMINE

in purchasing the patent, even if he himself was not involved in said negotiation. TEK had the opportunity to depose Mueller, and may be cross-examined at trial by TEK regarding the negotiation.

As for TEK's complaint that AMI did not clearly disclose its reasonable royalties theory in discovery, while AMI's interrogatory response is undeniably silent on the theory, AMI did state in its complaint that AMI seeks "general and/or specific damages adequate to compensate AMI for Defendant's infringement, including a reasonable royalty and/or lost profits…"[5] Moreover, AMI's initial disclosures, served on September 30, 2011, also stated that AMI "may be seeking its lost profits, price erosion, and/or reasonable royalty for sales."[6] In any event, TEK has not identified any particular discovery it needed and was not able to obtain as a result of the interrogatory response, and Hansen was available for deposition to mitigate prejudice.

With regard to TEK's final complaint, although TEK claims Hansen's reasonable royalty analysis is "outright speculation" and will not aid the jury, Hansen properly considered a hypothetical negotiation between AMI and TEK for a license of the '581 patent that would have taken place at the time TEK supposedly began infringing.[7] Once again, cross-examination should provide a more than sufficient opportunity for TEK to expose any inadequacies in Hansen's views to the jury.

---

[5] Docket No. 37 at 8.

[6] Docket No. 157, Ex. 6 at 5.

[7] *See, e.g., ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010) ("A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began.").

3
Case No.: 11-774 PSG
ORDER ON MOTIONS IN LIMINE

IT IS SO ORDERED.

Dated: April 2, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

4

Case No.: 11-774 PSG
ORDER ON MOTIONS IN LIMINE