1
2
3
4
5
6
7

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SEALANT SYSTEMS INTERNATIONAL, INC. et al., | ) ) ) | Case No. 5:11-cv-00774-PSG |
| Plaintiffs, | ) ) ) | **ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION** |
| v. | ) ) ) | |
| TEK GLOBAL, S.R.L., et al., | ) ) | |
| Defendants. | ) ) | **(Re: Docket No. 312)** |

After a jury rendered its verdict on all triable issues, this court enjoined Defendants TEK

Global S.R.L. and TEK Corporation from various acts found to infringe United States Patent No.

6,789,581.[1]  Despite the irreparable harm to Plaintiff Accessories Marketing Inc. supporting the

permanent injunction, the court also ordered a ninth-month sunset period for TEK to get its affairs

in order and minimize any unjustified impact on third parties.[2]  These nine months were on top of

the 11 months since a jury found that TEK infringed multiple valid patent claims.  20 months are

not sufficient enough for TEK; TEK now moves for a stay of the injunction altogether or at least an

extension of the sunset period for another five months so that it may pursue relief from the Federal

---

[1] *See* Docket No. 284.

[2] *See id.*

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

Circuit.[3]  TEK's request for relief from the injunction is not its first—as an alternative to denying the injunction outright TEK sought precisely the same stay in opposing the injunction at the outset.[4]  As before, the court finds that neither a stay of the injunction or nor an extension of the sunset period is warranted, but that a modest modification to the injunction's terms is.

## I.

Especially in the aftermath of the Supreme Court's 2006 decision in *eBay v. MercExchange*, a permanent injunction in a patent case is no mere perfunctory or mechanical exercise.  Indeed, as the Supreme Court itself emphasized, such injunctions may issue only "in accordance with the principles of equity."[5]  One tool trial courts may use in applying such principles lies in Fed. R. Civ. P. 62(c), which authorizes the suspension or modification of an injunction pending appeal from a final judgment granting the injunction.[6]

In deciding whether to suspend or modify an injunction, the court must consider four factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits of its appeal; (2) whether the movant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure other parties interested in the proceeding; and (4) the public interest.[7]  While the undersigned has expressed its doubts, other courts have equitably applied these

---

[3] *See* Docket No. 312 at 2.

[4] *See* Docket No. 258 at 25.

[5] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 338, 392 (2006) (citing 35 U.S.C. § 283).

[6] *See* Fed. R. Civ. P. 62(c); Fed. R. App. P. 8(a)(1); *see also Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008) (observing that district courts "possess broad equitable authority to modify injunctions"); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1339 (Fed. Cir. 2013) (finding that 18-month sunset period was not an abuse of discretion); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (approving injunction including 20-month sunset provision); *B. Braun Melsungen AG v. Terumo Medical Corp.*, 778 F. Supp. 2d 506, 524 (D. Del. 2011) (issuing injunction with 15-month sunset period).

[7] *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.* 897 F.2d 511, 512 (Fed. Cir. 1990) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

**United States District Court**
For the Northern District of California

factors on a "sliding scale," so that even where the movant only demonstrates a "substantial" chance of success on the merits, a stay may be appropriate if the balance of the hardships weigh in the movant's favor.[8]  Similarly, if the movant is more likely to win on appeal, the balance of harms may weigh less heavily in its favor.[9]  Among other factors, "evidence of employee layoffs, immediate insolvency, and possible extinction of a company provide a basis of irreparable harm that militates in favor of granting a stay."[10]

While a permanent injunction may have been warranted, this "does not preclude a granting of a stay of that injunction pending appeal as both issues require different analyses."[11]  Though the harm to the alleged infringer receives limited weight in the context of a motion for a permanent injunction, the "analysis changes in the context of a request for a stay on appeal because of the

---

[8] *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, Case No. 10-CV-3428-PSG, 2013 WL 557102, at *2 (N.D. Cal. Feb. 12, 2013); *cf. Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) (continuing to apply sliding-scale approach after careful consideration of *Winter*). *See also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 51 (2008) (Ginsberg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today") (citation omitted); *see also Apple, Inc. v. Samsung Elecs. Co.*, Case No. 5:12-cv-00630-LHK, 2012 WL 2576136, *2 (N.D. Cal. July 3, 2012) (applying the "sliding scale" approach and noting the court "need not . . . give equal weight to each of the four factors").

[9] *See Standard Havens Prods., Inc.*, 897 F.2d at 512.

[10] *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 5:11-cv-01846-LHK, 2012 WL 2527044, at * 7 (N.D. Cal. July 2, 2012) (citing *Standard Havens Prods.*, 897 F.2d at 515); *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 766 F. Supp. 818, 823 (1991) (granting stay of injunction pending appeal where it appeared "highly likely that, when and if the injunction is finally enforced, [defendants would] be forced out of business").

[11] *Smith & Nephew, Inc. v. Arthrex, Inc.*, Case No. 2:07-cv-335-TJW, 2010 WL 2522428, at *5 (E.D. Tex. June 18, 2010) (holding that "while in the context of awarding a permanent injunction the Court finds that the balance of hardships favors [plaintiff], the Court finds that in the context of a stay of the permanent injunction pending appeal the balance of hardships favors [defendant]").

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

chance for reversal."[12]  Still, the movant must show that the "balance of hardships" against the substantial harm to the nonmoving party "tips sharply in [the movant's] favor."[13]

TEK brought the parties to federal court by charging AMI's sister company Sealant Systems International, Inc. with infringement of TEK's U.S. Patent No. 7,789,110 in the Southern District of New York.[14]  SSI then sued TEK for a declaratory judgment of noninfringement of the '110 patent in this district.[15]  After AMI purchased U.S. Patent No. 6,789,581 from an unrelated third party, AMI's claim for infringement was added in the first amended complaint.[16]  SSI then filed a second amended complaint adding TEK as a defendant with respect to the claim of infringement.

After the New York case was transferred here, the cases were consolidated.[17]  The court granted AMI's motion for summary judgment that it did not infringe the '110 patent and set the remainder of the case for trial.[18]  A jury found for AMI on the '581 infringement claims.[19]  After careful consideration of the *eBay* factors, including TEK's strenuous claims at trial that the '581 patent was not necessary for a successful tire repair kit and could be quickly designed-around, as

---

[12] *Extreme Networks, Inc. v. Enterasys Networks, Inc.,* Case No. 07-cv-229-BBC, 2009 WL 679602, at *4 (W.D. Wis. Mar. 16, 2009) (granting a stay even though the court "disagree[d] with defendant's challenges to the jury's verdict," because "the court of appeals may see things differently").

[13] *Apple, Inc.*, 2012 WL 2576136 at *8 (citation and brackets omitted; italics in original).

[14] *See* Docket No. 101-2 at 1.

[15] *See* Docket No. 1.

[16] *See* Docket No. 37.

[17] *See* Docket No. 8.

[18] *See* Docket No. 134 at 18.

[19] *See* Docket No. 217.

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

United States District Court
For the Northern District of California

well as strong evidence of fierce competition between TEK and AMI in the on-board-tire-repair-kit market, the court granted AMI's motion for permanent injunction.[20]

The permanent injunction requires TEK and affiliates to cease: (1) making, using, selling, offering to sell, or importing in the U.S. any tire repair kit that includes features infringing specified claims of the '581 patent; (2) providing customer service or technical support related to those products; and (3) modifying or updating any documentation regarding the operation or use of such products.[21]  To ease the impact of the injunction on both TEK and third parties, a temporary sunset provision with various restrictions delays the effect of this permanent injunction for nine months, until December 10, 2014.[22]  During this period, TEK may continue to sell infringing kits for certain pre-qualified Original Equipment Manufacturers' platforms.[23]

TEK has since appealed to the Federal Circuit, claiming that the '110 claims were improperly dismissed, that the '581 patent is invalid and that TEK is not infringing.[24]  TEK also appeals the permanent injunction, arguing that there was no willful infringement before AMI brought suit, that neither AMI nor SSI had practiced the '581 patent at issue, and that there was no need to restore market share to a competitor of TEK.[25]

In its opposition to AMI's permanent injunction motion, TEK initially sought a stay as an alternative.[26]  Relying on what it claims are "changed circumstances" hindering the implementation of a non-infringing design that threaten TEK's very existence, TEK now seeks a stay for the

[20] *See* Docket No. 283 at 48.

[21] *See* Docket No. 284 at 1.

[22] *See id.* at 1-2.

[23] *See id.* at 2.

[24] *See* Docket No. 290.

[25] *See id.*

[26] *See* Docket No. 259 at 25.

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

second time, pending a hearing and decision on TEK's appeal to the Federal Circuit.  In the alternative, TEK requests that the court extend the injunction's sunset period until April 10, 2015.[27] TEK further requests that the court narrow the sunset provision's customer certification requirement, which requires TEK to obtain agreements to restrict the use of the products from customers who have purchased TEK products after April 25, 2013.[28]

## II.

This court has jurisdiction under 28 U.S.C. § 1338.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

Although this is not is the first time TEK has sought a stay of the injunction pending appeal, changed circumstances can justify what is effectively a motion for reconsideration.[29]  One might reasonably question whether at least some of the circumstances TEK points to are truly changed. For example, then as now, TEK cites the impact of the injunction on its customers' willingness to consider its infringing products.  The court need not resolve that question, however, because even if none of the circumstances at issue were known before, a stay of the injunction still is not warranted.

## III.

*Standard Havens* requires the court to weigh: (1) whether TEK has made a strong showing that it is likely to succeed on the merits on appeal; (2) whether the TEK will be irreparably injured absent a stay; (3) whether a stay will substantially injury parties other than TEK or AMI with an

---

[27] *See* Docket No. 312 at 1-2.

[28] *See id.* at 13-14.

[29] *See* Civil L.R. 7-9.

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

**United States District Court**
For the Northern District of California

interest in this proceeding; and (4) the public interest.[30]  On the record before the court, even as supplemented by TEK with its changed circumstances, all four factors weigh against a stay.

**First**, TEK offers nothing new relevant to its potential for success on the merits of its appeal, and in line with its previous findings, the court concludes that TEK is unlikely to prevail.  Of course this is ultimately an issue for the Federal Circuit to resolve for us all.  But after many days of evidence, argument and deliberation, nine citizens of this district found claims 27-31, 24, 40, and 42 were infringed by a preponderance of the evidence.[31]  That same jury unanimously found TEK did not prove invalidity by clear and convincing evidence.[32]  The court's 64-page order addressing the parties' various post-trial motions explained that the jury verdict was supported by substantial evidence, and nothing TEK presents now suggests otherwise.[33]  TEK also fails to present new evidence to suggest that the court abused its discretion or committed clear error in finding the four *eBay* factors supported issuing the injunction.

TEK does not seriously dispute that any of its changed circumstances evidence suggests in any meaningful way that it is likely to succeed on appeal.  It instead presents the same port, receptacle, reservoir and causal nexus arguments as it did before.  Significantly, as to all but one

---

[30] *Standard Havens Prods., Inc.*, 897 F.2d at 512.

[31] *See* Docket No. 283 at 8-10.

[32] *See id* at 16.

[33] *See Enovsys LLC v. Nextel Comms., Inc.,* 614 F.3d 1333, 1341 (Fed. Cir. 2010) ("a jury verdict 'must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion'") (citation omitted); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1370-71 (Fed. Cir. 2009) (finding substantial evidence is "relevant evidence reasonable minds might accept as adequate to support the jury's conclusion . . . A court will not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists"); *Boehringer Ingelheim Vetmedica, Inc. v. Schering- Plough Corp.*, 320 F.3d 1339, 1350 (Fed. Cir. 2003) (holding the court "must draw all reasonable inferences in favor of the nonmoving party . . . [and] disregard all evidence favorable to the moving party that the jury was not required to believe"); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) ("Where, as here, a jury finds a patent valid," the Federal Circuit "will not disturb that finding unless reasonable jurors could not have reached that verdict").

7

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

United States District Court
For the Northern District of California

claim—claim 42—TEK challenges only the jury finding of no anticipation, but not non-obviousness or infringement.  As the court explained at length in its order, substantial evidence including expert testimony from not only AMI, but also TEK itself, supports the jury's findings.[34]

*Second*, as to TEK's irreparable injury, TEK has not offered sufficient evidence that goes beyond its mere allegations.  TEK leans heavily on the suggestion that testing and validation for OEM customers has proven slower than previously anticipated and that no OEM customer will buy a product that is not globally compliant, precluding any non-infringing alternative for the U.S. market alone.[35]  TEK also points to layoffs it has already suffered contemporaneously with the switch of one OEM to a non-infringing substitute.[36]  But even if this was not anticipated when TEK first raised the possibility of a stay, and there was sufficient evidence in the record to substantiate the causation beyond the correlation that it claims, harm from avoiding infringement has long been recognized as an insufficient basis for staying an injunction.[37]  It does not matter that TEK's infringement was not found to be willful.[38]  Over the 20 months between the verdict and the expiration of the sunset period, all OEMs have had plenty of opportunity to stock up on TEK products during that period to manage until the redesigned product is completely ready to go.

---

[34] *See* Docket No. 283.

[35] *See* Docket No. 312-1 at ¶ 12-14.

[36] *See id.* at ¶ 16.

[37] *See, e.g., Stryker Corp. v. Zimmer Inc.*, Case No. 1:10-cv-1223, 2013 WL 6231533, at *26 (W.D. Mich. Aug. 7, 2013) ("an immediate injunction will only injure Zimmer to the extent Zimmer will no longer be allowed to infringe Stryker's patents, something it had no right to do in the first place").

[38] In support of its argument to the contrary, TEK cites to *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).  But *Grain Processing* was an opinion about lost profits, not its permanent injunctions.  In any event, while noting that TEK's claimed hardships come from its infringement, the court has hardly "disregarded them altogether," *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 955 F. Supp. 2d 69, 79 (D. Mass. 2013), as TEK suggests.  Even as recently as late last week, the court accepted additional evidence of hardship tendered by TEK.

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TEK claims that once the sunset period ends, it will be unable to sell products in the TEK400 and TEK500 families that have made up a substantial percentage of TEK Corporation's revenues over the past five years.[39]  The projected loss of TEK Corporation's revenue does not, of course, reflect what percentage of TEK Global's revenue is at risk.  The record is clear that TEK Global's revenue is more diversified.[40]  Even as to TEK Corporation, TEK offers only its own speculation that it faces a break-up of its OEM business as a result of the denial of the stay, as opposed to the entry of the injunction in the first place.  The only customer from whom TEK tenders any evidence makes clear that it views the date of the injunction as dispositive no matter the entry of the stay.[41]  And if anything, TEK's claims about the centrality of the claimed invention to its revenue stream undermine rather than support the argument in favor of a stay.  The reason is that such inventions do not implicate the concerns raised in Justice Kennedy's *eBay* concurrence:   "[w]hen the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest."[42]

TEK itself acknowledges that it has already constructed a prototype of its design-around product,[43] and the re-designed product should be on the market in the United States by April 2015,[44] another factor pointing toward TEK's limited harm.

---

[39] *See* Docket No. 312 at 4.

[40] *Cf. Hynix Semiconductor Inc. v. Rambus Inc.,* 609 F. Supp. 2d 951, 968 (N.D. Cal. 2009) (denying injunction that would "decimate" the infringer's business).

[41]  *See* Docket No. 333-4 at 6 ¶ 2.

[42] 547 U.S. at 396-97.

[43] TEK had its prototype ready in August 2013, four months after the jury verdict.  *See* Docket No. 318 at 14.

9

United States District Court
For the Northern District of California

***Third***, as to injury to other parties interested in the proceeding, TEK offers no new evidence that further delaying the injunction does not injure AMI.  At best TEK urges that AMI might suffer no greater harm than it is now, especially if OEMs took up AMI's suggestion that they are free to stock up during the period of TEK's remaining sunset period.[45]  TEK also questions the significance of AMI's harm when it does not practice the '581 patent and in fact purchased the patent only after this litigation was launched.[46]  But TEK's bootstrapping would require a follow-on stay anytime even if a one-day sunset period were permitted.  Nothing in the case law even hints at such an outcome.

More fundamentally, these arguments take no account of the fundamental nature of the right at issue:  the right to exclude.[47]  No matter AMI's lack of practice of the patent or when AMI acquired it, TEK's ongoing infringement denies AMI of AMI's right to exclude competitors from practicing the '581 patent's claims.[48]  While perhaps less well-remembered than its criticism of the Federal Circuit, *eBay*'s criticism of the district court's seeming reliance on such distinctions was

---

[44] *See* Docket No. 312 at 1-2.

[45] *See* Docket No. 315 at 19.  TEK replies that AMI's "is a curious line of argument indeed, because it suggests that AMI believes it would *not* be irreparably harmed (as long as it receives royalties on sales of the accused products) if TEK supplies OEMs with the accused products beyond December 10, 2014.  From AMI's perspective, it shouldn't make any difference whether OEMs stock up on the accused products prior to December 10, 2014 or continue to order them as needed during the appeal period."  *See* Docket No. 319 at 4.

[46] *See* Docket No. 312 at 1, 10.

[47] *See Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012) ("A patentee's right to exclude is a fundamental tenet of patent law").

[48] *See Brocade Comms. Systems, Inc.*, 2013 WL 557102 at *4 ("Because Brocade's right to exclude a direct competitor from practicing its patents cannot be remedied through damages, an injunction is appropriate"); *see also Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("the fact that Trebro does not presently practice the patent does not detract from its likely irreparable harm").

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

just as pronounced.  "[T]raditional equitable principles do not permit such broad classifications."[49]

Put another way, whether for Thomas Edison and his light bulb patents or AMI and its off-the-shelf

purchase, the exclusive rights under 35 U.S.C. § 271 are the same; that period of exclusivity never

comes back.

TEK does offer that the court might impose conditions on the stay to temper any alleged

injury that AMI might suffer.  For example, TEK might be permitted to sell the accused products

during the extended stay period only to existing OEMs and only for the vehicle platforms that were

qualified and validated by April 25, 2013, with royalties covered by TEK's $3,500,000 cash

bond.[50]  But TEK's proposed bargain amounts to a compulsory license to that competitor.[51]  And

AMI has never licensed the '581 patent to anyone, let alone a competitor.[52]

Other trial courts have held the same in similar circumstances.  For example, in *Broadcom

Corp. v. Qualcomm, Inc.*, the court held that while the patentee's failure to offer a replacement

product for the infringing product may affect the degree of competition, an injunction and not

merely a compulsory license was nevertheless warranted because both firms compete in the same

market, a market the patent holder should have the opportunity to exploit.[53]  Similarly, in *Callaway

Golf Co. v. Acushnet Co.*, the court granted a permanent injunction rather than a compulsory

license because the patentee faced lost market share from the defendant's ongoing infringement.[54]

---

[49] *eBay Inc.*, 547 U.S. at 393.

[50] *See* Docket No. 319 at 13.

[51] *See Paice LLC v. Toyota*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) ("Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate").

[52] *See* Docket No. 315 at 18.

[53] *Broadcom Corp. v. Qualcomm Inc.*, Case No. SACV 05–467 JVS-RNBx, 2007 U.S. Dist. LEXIS 97647, at *7 (C.D. Cal. Dec. 31, 2007) (Docket No. 995).

[54] *Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 600, 622 (D. Del. 2008) (vacated on other grounds).

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, the court held that "the incumbency benefits of Fairchild defeating Power for 'design wins' cannot be fully compensated by payment of damages."[55]  Courts have declined to impose a compulsory license even on patent holders who are not presently manufacturing the claimed invention or otherwise actively using the patented technology.[56]

**Fourth**, TEK offer no new evidence that a stay of the injunction would favor the public interest.  However under attack the right to exclude under a patent may appear in 2014, the public interest remains well-served by the enforcement of that right under patents that are valid and infringed.[57]  The injunction is narrowly tailored and already includes the nine-month sunset period.[58]  Together with the 11 months that preceded the entry of the injunction, the public will have been spared whatever ill effects of the injunction for no less than 20 months.  While TEK is absolutely right that the public has a strong interest in maintaining a competitive market for tire repair kits, that market is supported by the capital investments in research and development that patents and patent alienability nurture.  That an infringing competitor may expand market output

---

[55] *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, Case No. 08-309-LPS, 2014 WL 2960035, at *1-2 (D. Del. June 30, 2014).

[56] *See, e.g., Emory Univ. v. Nova BioGenetics, Inc.*, Case No. 1:06-cv-0141-TWT, 2008 U.S. Dist. LEXIS 57642, at *1-2, 11-14 (N.D. Ga. July 24, 2008); *Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, Case No. 04-5172-JAP, 2009 U.S. Dist. LEXIS 15531, at *32, 40 (D.N.J. Feb. 26, 2009).

[57] *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (holding that the "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects").

[58] *Cf. Qualcomm Inc.*, 543 F.3d at 704; *Emulex Corp.*, 732 F.3d at 1339 (approving a sunset period that "allowed for time to remove the infringing product from the market without causing significant downstream disturbance for OEMs and consumers"); *i4i Ltd. P'ship*, 598 F.3d at 863 (holding that the "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects").

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

and lower prices in the short run does not change this fundamental market principle in the long run.[59]

It may be true that come December TEK may no longer help customers and downstream users or update documentation or user manuals with respect to its products that infringe.  But TEK offers little evidence that the customers and suppliers themselves face significant disruption from these limitations and offers no authority that the speculative effects of an injunction should be weighed in the court's calculation.  No imminent monopoly in the market for tire repair kits has been suggested, let alone substantiated, and no evidence suggests that with the substantial sunset period already in place customers have struggled to transition.  If anything, the court must defer to testimony of TEK's Chief Executive Officer Guido Petrelli, who previously declared it "does not cause great expense or delay" for OEMs to switch suppliers.[60]

TEK alternatively requests that the court extend the sunset provision by five months to allow TEK to bring to market a non-infringing alternative amid unanticipated lengthy testing and validation required by TEK's customers.[61]  TEK predicts this additional testing and validation will not be completed until April 10, 2015, potentially leaving TEK with five months in which they are unable to sell either the accused products or its design-around, impacting the bulk of their revenue.[62]  The problem for TEK is that TEK itself previously confirmed that nine months would

---

[59] *See Douglas Dynamics, L.L.C. v. Buyers Prods. Co*., 717 F.3d 1336, 1346 (Fed. Cir. 2013); *see also Winsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected").

[60] Docket No. 259-1 at ¶¶ 5, 7-9.

[61] *See* Docket No. 312 at 1, 10.

[62] *See id.*

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

be sufficient.[63]  There also is no evidence that customers would be harmed in the absence of an extension.  This is because, as TEK's own expert declared, an "OEM can cancel and change its order from [a] supplier with little difficulty" and "doing so does not cause great expense or delay for the OEM."[64]  And TEK's other evidence shows that customer preparations for the injunction are well under way.[65]

Where TEK does manage to persuade a change is in order is with respect the injunction's customer certification requirement.   TEK asks that the requirement be tweaked so that it applies only after the date of the permanent injunction's entry.[66]  As currently drafted, TEK must obtain from purchasers post-April 25, 2013 written certification "that the purchased Enjoined Product shall be used only as specifically and exclusively identified in an Appendix to this Injunction."[67] April 25, 2013, the day the jury reached its verdict, is months before the court first entered the injunction on March 10, 2014.  Even if none of the customer certifications reference purchases made before January 2, 2014,[68] TEK is right in pointing out that it does not make sense to impose restrictions on any customers retroactively.  While counting post-verdict sales is important for calculating post-verdict, pre-injunction royalties, the separate requirement of a royalty report already serves the purpose of verifying the accuracy of TEK's sunset period royalty payments.

---

[63] *See* Docket No. 303 at 32:22-25 ("the time of the sunset period is fine"); Docket No. 259-1 ("by the time the sunset period ends, TEK will be on the market with a newly designed product"); Docket No. 259-1 at ¶ 20 ("TEK's new product is at the prototype stage and should be read within the sunset period offered by AMI").

[64] *See* Docket No. 312 at 4 (citing Docket No. 259-1 at ¶¶ 5, 7-9).

[65] *See, e.g.,* Docket No. 333.

[66] *See* Docket No. 312 at 13.

[67] *See* Docket No. 284 at 2; Docket No. 312 at 13.

[68] *See* Docket No. 315 at 22.

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION

The court therefore amends the date of the written certification requirement to March 10, 2014. If AMI finds TEK's royalty report does not properly verify the accuracy of TEK's sunset period royalty payments, it may of course seek separate relief.

**SO ORDERED.**

Dated: October 13, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:11-cv-00774-PSG
ORDER DENYING MOTION TO STAY, DENYING MOTION TO EXTEND SUNSET
PERIOD, AND GRANTING MOTION TO MODIFY INJUNCTION